# Exhibit "B"

# AIRCRAFT SECURITY AGREEMENT

THIS AIRCRAFT SECURITY AGREEMENT ("Agreement") is made as of the 14th of October 2004, by and between **AIRCRAFT SALES GROUP, INC. a Nevada Corporation,** with its principal place of business located at **530 Las Vegas Blvd. South, Las Vegas, Nevada 89101,** (the "Borrower") and **SOVEREIGN BANK**, a federal savings bank, with a place of business located at 75 State Street, MA1-MB2-03-01, Boston, Massachusetts 02109 (the "Bank").

WHEREAS, Borrower has requested that Bank extend a loan (the "Loan") to purchase an aircraft or to refinance a currently owned aircraft to be repaid in accordance with the terms of an Aircraft Promissory Note of even date (the "Note"); and

WHEREAS, Borrower represents that the aircraft is based or will be based at: **Lakeland Linder Regional Airport, Lakeland, Florida**. Borrower also represents that the aircraft is not used and will not be used for the carriage of persons or property in air commerce for compensation or hire except as follows: NONE
_____ ; and

WHEREAS, the Bank is willing to extend the Loan on the condition that Borrower grant Bank a first priority security interest in Borrower's aircraft in accordance with the terms of this Agreement.

NOW, THEREFORE, BORROWER AND BANK AGREE AS FOLLOWS:

1. **Grant of Security Interest.** The Borrower hereby grants Bank a security interest in all of its right, title and interest in and to the following personal property whether now owned or hereafter acquired by Borrower and wherever located (collectively, the "**Collateral**"):

    A. **Airframe Description.**

    | Manufacturer | Model | FAA Registration No. | Serial No. |
    | --- | --- | --- | --- |
    | Piper | PA-31P | N66809 | 31P-7300171 |

    Unless specifically described below, the foregoing airframe includes any aircraft engines and propellers that are installed thereon either now or in the future.

    B. **Related Equipment.** All avionics, parts, spare parts, equipment, appliances, accessions and accessories relating to, affixed to or used in conjunction with the above described airframe including, but not limited to, the radio, radar, navigation systems and other electronic equipment described on **Exhibit "A"** attached hereto and made a part hereof.

    **C.** **Engines.** The following engines each of which has at least 750 takeoff horsepower or its equivalent:

| Manufacturer | Model | Serial No. |
|---|---|---|
| | | |
| | | |

    **D.** **Propellers.** The following propellers each of which is capable of absorbing 750 or more rated takeoff shaft horsepower:

| Manufacturer | Model | Serial No. |
|---|---|---|
| | | |
| | | |

    **E.** **Log Books.** All engine and airframe log books, maintenance records and all airworthiness certificates relating to the airframe, engines and propellers described above (all of which property described in Paragraph 1.A. through E. is hereinafter collectively called the **"Aircraft"**).

    **F.** **Proceeds.** All proceeds of every kind and nature of any of the foregoing Collateral ("**Proceeds**") including, but not limited to, all replacements thereof and substitutions therefor, all payments under insurance (whether or not Bank is loss payee under the policy), any indemnity, warranty or guaranty payable by reason of loss or damage to the Aircraft, and any payments under a lease or rental agreement with respect to the Aircraft (whether contrary to the terms of this Agreement or with the consent of Bank).

    **2.** **Indebtedness Secured.** Borrower hereby grants Bank the foregoing continuing security interest in the Collateral to secure the repayment of the Loan and the Note (including all renewals, refinancings, and extensions thereof) and any and all other obligations of any and every kind and nature heretofore, now, or hereafter owing from Borrower to Bank and however incurred or evidenced, whether primary, secondary, contingent or otherwise, whether arising under this Agreement or under any other security agreements, promissory notes, guaranties, mortgages, leases, instruments, documents, contracts or agreements heretofore, now, or hereafter executed by Borrower (hereinafter collectively called the **"Liabilities"**) together with all interest, costs and expenses and reasonable attorneys' fees made or incurred by Bank in the disbursement, administration, and collection of the Liabilities, and in the protection, maintenance, and liquidation of the Aircraft, including without limitation all of Bank's costs and expenses incurred in locating or repossessing the Aircraft, returning the Aircraft to the location designated by the Bank, and all costs of repairing, rehabilitating, insuring and storing the Aircraft.

2

3. **Representations and Covenants.** Borrower represents and, until the Liabilities are paid in full, covenants as follows:

   A. **Recitals.** The statements made in the recitals to this agreement are true and correct and will continue to remain true and correct until the Borrower notifies Bank in writing to the contrary.

   B. **Citizenship.** Borrower qualifies in all respects as a citizen of the United States as defined in the Federal Aviation Act of 1958, as amended (the "**Act**") and the Aircraft is not currently registered and will not be registered in the future under the laws of any other country.

   C. **Borrower's Existence and Authority.** To the extent Borrower is a legal entity, it is in good standing or otherwise registered and validly existing under the laws of the state referenced after its name on the first page of this Agreement and the person(s) executing this Agreement on behalf of Borrower has full power and complete authority to execute this Agreement, the Note, and all other related documents.

   D. **Financial Information.** All financial information provided by Borrower to Bank fully and fairly presents the financial condition of the Borrower, and since the date of the Borrower's latest financial statements provided to Bank, there has been no material adverse change in Borrower's business, property, or condition (financial or otherwise). Borrower will provide, upon the request of Bank, such financial statements and information as reasonably requested by Bank.

   E. **Title and Encumbrances.** Borrower is (or, after disbursement of the Loan proceeds in accordance with Borrower's directions, will be) the beneficial owner of the Aircraft holding title to the Aircraft, free and clear of any liens or encumbrances other than the security interest granted to the Bank under this Agreement. Borrower will keep the Aircraft free and clear of any and all non-Bank security interests, liens, and claims of any and every kind and immediately advise Bank in writing of the commencement of any proceeding, action, suit, claim or occurrence concerning the Collateral or which affects or may affect Borrower's continued possession of the Aircraft.

   F. **No Litigation.** There are no suits or proceedings pending before any court, government agency, arbitration panel, or administrative tribunal (or, to Borrower's knowledge, threatened against Borrower) which may result in any material adverse change in the business, property or condition of Borrower (financial or otherwise).

   G. **Taxes.** Borrower has filed all federal, state and local tax returns which Borrower is required by law to file, and all such taxes are current and have been paid in full.

   H. **Non-Violative.** Borrower's execution of the Note, this Agreement, and all related documents and agreements pertaining to the Loan or the Liabilities does not violate nor constitute a breach of Borrower's articles of incorporation or bylaws (if Borrower is a corporation), operating agreement (if Borrower is a limited liability company) or partnership agreement (if Borrower is a partnership) nor does Borrower's execution of the Note, this

3

Agreement and such related documents and agreements constitute a breach of any other agreement to which Borrower is a party or to which it is subject.

  **I.** **Business Purpose.** Borrower represents that the Loan proceeds and the Collateral have not and will not be used for primarily personal, family or household purposes. If Borrower is a natural person, the Borrower does not consider and will not consider the Aircraft a dwelling, as such term is defined under Regulation Z issued by the Board of Governors of the Federal Reserve System to implement the Federal Truth in Lending Act (15 U.S.C. 1601 *et seq.*).

  **J.** **No Sale or Lease.** Notwithstanding Borrower's grant of a security interest in the Proceeds, Borrower will not sell or lease or otherwise transfer the Aircraft or any parts thereof to any other person, party or entity, for any purpose without the prior written consent of Bank.

  **4.** **Additional Covenants.** Until the Liabilities are paid in full, Borrower shall:

  **A.** **Aircraft and Logbook Maintenance.** Maintain, service, repair, overhaul, and test the Aircraft so as to keep the Aircraft in good operating condition and at all times in such operating condition as is necessary to enable the airworthiness certification of the Aircraft to be maintained in good standing under the Act and maintain or cause to be maintained all records, logs, and other materials required to be maintained on the Aircraft by the Federal Aviation Administration (the "FAA").

  **B.** **Aircraft Damage.** Immediately inform the Bank, in writing, of any damage to, destruction of, or confiscation of the Aircraft or any part thereof.

  **C.** **Inspection of Aircraft.** Permit or authorize the Bank or its agents to inspect the Aircraft and copy Borrower's records pertaining thereto including, but not limited to, the Aircraft's log books and maintenance records.

  **D.** **Compliance With Law.** At all times to strictly observe, obey, and comply with all applicable federal, state, and local statutes, ordinances and regulations, including by illustration, but not limitation, the Act and the FAA regulations, rules and orders promulgated thereunder.

  **E.** **Insurance.** Borrower shall at all times, at its own expense, maintain in effect the following casualty insurance for an amount not less than the amount financed by the Bank with insurers satisfactory to Bank and rated B+ or better by Best's Rating Service: (i) Aircraft Hull All Risks Insurance covering both ground and flight exposure (including any engine and propeller when not installed) in all geographical areas in which the Aircraft will be operated; and (ii) if the Borrower may, in the judgment of Bank, operate the Aircraft outside the continental United States, appropriate Hull War Risks and Allied Perils Insurance (including, without limitation, hijacking, air piracy, confiscation, and expropriation by governments). All such casualty policies shall (1) name the Bank as loss payee under a standard loss payable clause; (2) provide that if the insurer(s) cancel such insurance for any reason whatsoever, or if the same is allowed to lapse for nonpayment of premium, the insurer(s) shall give Bank not less than thirty (30) days [ten (10) days with respect to War Risk coverage] advance written notice of

such cancellation or lapse; and (3) provide that with respect to the interest of Bank, the insurance afforded shall not be invalidated by any action or neglect of the Borrower whether or not such act or neglect is a breach or violation of any warranties, declarations or conditions contained in such policies.

Borrower shall further maintain, at its own expense, Aircraft Liability and Comprehensive General Liability insurance naming both Borrower and Bank as insured parties. The provisions of such liability insurance policies shall apply separately to each insured against whom claim is made or suit is brought except with respect to limits of liability. Borrower shall not use or permit the Aircraft to be used for any illegal purpose or in a manner for which the Aircraft becomes uninsured.

Borrower shall either deliver to the Bank the policies required herein or shall arrange for delivery to Bank of appropriate certifications from insurance underwriters of recognized standing certifying to Bank that the insurance coverage required under this Agreement are in effect.

The Bank is hereby appointed attorney-in-fact for the Borrower with respect to any and all insurance policies covering the Aircraft, whether or not Bank is named as loss payee in such policies, to make proof of loss, settle or compromise claims, and to receipt for any sums collected under such policies. Borrower shall not adjust, settle, or compromise any loss or claim with Borrower's insurance carrier without the prior written consent of the Bank. Any injury to or loss of the Aircraft from whatever cause shall not release Borrower from the payment of any Liabilities. If Borrower at any time fails to obtain or maintain the insurance coverage required above or pay any insurance premium due, the Bank, without waiving or releasing the default of Borrower hereunder, may at any time (but without obligation to do so) make such payment and obtain and maintain such policies of insurance, pay such premiums, and take such action with respect thereto as Bank deems advisable. All sums disbursed by Bank pertaining to the Aircraft, including but not limited to insurance premiums, attorneys' fees, court costs, expenses, and all other fees, charges, costs, and expenses relating thereto, shall be part of the Liabilities secured hereby and shall be payable upon demand, and upon nonpayment by Borrower shall bear interest at the highest interest rate specified in the Note.

5. **Events of Default**. Upon the occurrence of an Event of Default, as defined in the Note, Bank shall be entitled to exercise all of its legal rights and remedies, including the right to immediate possession of the Collateral, and shall be entitled to set-off against the Liabilities any of Borrower's deposit accounts with Bank. Borrower agrees, in case of default, to make the Collateral available at its expense, at a place acceptable to the Bank. Notification of intended disposition of the Collateral shall be deemed reasonably and properly given if sent at least ten (10) days before such disposition to Borrower and any guarantor at their last known address. Any private or public sale of the Aircraft by the Bank shall be without any warranties. The Bank may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance therewith will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral. The proceeds of sale will be applied to the reasonable expenses of retaking, holding, preparing for disposition, processing and disposing of the Collateral and, to the extent permitted by law, the Bank's reasonable attorney's fees and legal expenses or allocable costs of the Bank's internal legal department. All remaining proceeds will be applied to the Liabilities. If any money is left over (surplus) then, subject to the

rights of the holder of a subordinate security interest or lien, it will be paid to Borrower. In case of any deficiency upon sale of the Collateral, Borrower shall immediately pay such deficiency to the Bank.

6. **Indemnification.** Borrower agrees to at all times indemnify the Bank and its directors, officers, employees and agents, from and against any and all liabilities, obligations, losses, damages, penalties, actions, suits, costs, legal fees, expenses, and disbursements of any and every kind and nature as are imposed on, incurred by, or asserted against the Bank, its directors, officers, employees and agents which in any way arise out of or are related to the Aircraft and any other item of Collateral, the transactions contemplated hereby, or the use, possession, maintenance, operation, conditions, sale registration, ownership, lease or other disposition of the Aircraft and any other item of Collateral, including, without limitation, any and all claims or penalties arising from any violation of the laws of any country or political subdivision thereof and any loss of or damage to any property or the death or injury of any person.

7. **Legal Process.** Borrower consents and agrees that any legal proceeding brought by the Bank against Borrower with respect to the Loan and the Note, this Agreement or the Liabilities, may be brought in any federal or state court sitting in Massachusetts, and Borrower hereby irrevocably accepts and consents with regard to any such action or proceeding, to both the jurisdiction of the aforesaid courts and venue therein.

8. **General.** Except as otherwise defined in this Agreement, all terms in this Agreement shall have the meanings provided by the Act, rules, and regulations, and by the Massachusetts Uniform Commercial Code as either is amended from time to time. Borrrower authorizes Bank to file a photographic copy of this Agreement as a financing statement. Any delay on the part of the Bank in exercising any power, privilege, or right hereunder, under the Note, or under any other instrument or agreement executed by Borrower, shall not operate as a waiver thereof, and no single or partial exercise or the exercise of any other power, privilege, or right shall preclude other or further exercise thereof, or the exercise of any other power, privilege or rights. The waiver by Bank of any default by Borrower shall not constitute a waiver of any subsequent defaults. All rights, remedies, and powers of Bank hereunder are irrevocable and cumulative and not alternative or exclusive and shall be in addition to all rights, remedies, and powers given hereunder or by any other instruments, documents, and agreements with Borrower or by the Act or the Massachusetts Uniform Commercial Code.

This Agreement has been delivered in Massachusetts, and shall be construed in accordance with the laws of the Commonwealth of Massachusetts. Whenever possible each provision of this Agreement shall be interpreted in such manner as to be effective and valid under all applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be void or ineffective to the extent of such prohibition or invalidity only, without invalidating the remainder of such provision or the remaining provisions of this Agreement. The rights and privileges of the Bank hereunder shall inure to the benefit of its successors and assigns and this Agreement shall be binding on all successors and assigns of Borrower, but this Agreement is not assignable by Borrower.

This Agreement may only be modified by a written agreement which specifically refers to this Agreement and which is signed by the Bank, the Borrower and any other party charged with the changes expressed in such modification. Any notices required to be given hereunder or at law shall be deemed served if such notice is in writing, addressed to the parties hereto at the last known address of such party and deposited in the United States mail postage prepaid.

Borrower acknowledges and agrees with Bank that this Agreement, the Note, and all of the other documents and agreements referenced herein are the entire agreement between the parties, and that there are no other agreements, written or oral, express or implied, and Borrower acknowledges receipt of a true and complete copy of this Agreement and such other documents, instruments, and agreements as Borrower shall have requested from Bank on or prior to the date of this Agreement.

**Waiver of Jury Trial.** The Borrower and the Bank acknowledge that the right to trial by jury is a constitutional one, but that it may be waived. Each party, after consulting (or having had the opportunity to consult) with counsel of their choice, knowingly and voluntarily, and for their mutual benefit, waives any right to trial by jury in the event of litigation regarding the performance or enforcement of, or in any way related to, this Agreement or any document executed in connection therewith.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date above written.

"BORROWER": AIRCRAFT SALES GROUP, INC.

By: Lance S. McDougle
Its: President

EIN Number: 20-1718454

"BANK"
SOVEREIGN BANK

By:_____

Its:_____

0668082.06 (rev. 2/04)

7